JOHN BROOKS *vs.* WALTER B. BROOKE AND JAMES B. BELT, ADM'R. OF EDWARD W. BELT, AND T. HODGKIN, ADM'R. OF ALEX. H. BOTELER.—*June Term*, 1842.

A bill which sets out the previous proceedings of the court as a portion of the facts out of which the complainants equity arises, though alleged to be on its face a supplemental bill, yet did not seek to alter or amend any decree or order passed in this cause, is neither a supplemental bill, nor a bill in the nature of a bill of review, but is an original bill.

The general rule is, that a Court of Chancery has no power over the securities of a trustee of the court, but this has some exceptions.

Where property is sold under a decree of a court of equity, the proceeds of sale are considered in the custody of the court, and no person, whether a party to the bill or otherwise, can maintain a suit at law for the recovery of any portion thereof, until the payment of a claim, thus prosecuted, shall have been awarded by the court, and notice of such award, and a demand of payment, shall have been made of the trustee or other officer in whose hands the funds may have remained as the fiduciary agent of the court.

But where the trustee is delinquent, and having wasted the fund dies intestate, without any administrator, or estate on which administration could be had, and a claimant could not place himself in a situation to proceed at law, by obtaining a previous award against the trustee, accompanied with notice and demand of payment, then equity will afford relief against his securities.

Evidence by an under clerk employed in the office of a clerk of the county court, that he had made a careful examination for a trustee's bond, of all the papers connected with the cause in which the bond had been given, and of all the other equity cases in the office since for the original bond,

and could not find it, and did not know where it was to be found, and that every bundle of papers in the office, and every part of the office, where he thought there was a possibility of finding it, he had also examined, and that he verily believes it to be lost, with proof that the bond once existed, is sufficient proof of its loss eo warrant the interposition of a court of equity as far as that fact would give it jurisdiction, but the loss of the bond was not material in this cause.

Where mortgaged premises are decreed to be sold, prior incumbrancers not parties to the bill, nor before the court, are not bound to seek payment of their claims out of the proceeds of sale in the hands of the trustee to make the sale, and if not paid off, may prosecute their liens upon the lands sold, after the conveyance to the purchaser, notwithstanding he had paid the whole purchase money, and the land had been sold to him by the trustee free from all incumbrances.

Where a trustee under a decree wastes a portion of the purchase money, and dies in default, a second trustee was appointed, the court may order him to pay off prior incumbrances with the funds in his hands, without prejudice to the right of judgment creditors having liens on the land to proceed against the securities of the first trustee to the extent of the funds wasted.

By a decree under which a sale was made, the trustee was ordered to report the sale and to bring the proceeds of sale into court; disobedience to the latter branch of this decree is a breach of the condition of his bond, for which he and is his securities may be sued at law by any person who can show himself damnified, and clothed with the requisite authority to sue.

A court of equity will do nothing to extend the liability of securities beyond the clear intent and import of their contract; but if to such an extent they cannot be held liable, by reason of fraud, accident, or mistake, it will to prevent a failure of justice, interfere, and enforce the execution of their contract according to its obvious meaning and design.

Chancery jurisdiction was originally assumed upon the great principle, that without it there would be a total failure of justice, a court of law being incompetent to grant adequate relief.

APPEAL from the Court of Chancery.

The bill in this cause was filed by the appellant on the 25th August, 1837, and prayed subpœnas against *Walter B. Brooke,* *Alexander H. Boteler,* and *Edward W. Belt,* and commenced— " The supplemental bill of complaint of *J. B.,* shows, that upon a bill of complaint filed in *Prince George's* county court as a court of equity, by *Lucy S. Brooke,* complainant, against *Walter B. Brooke,* such proceedings were had, that on or about the 27th July, 1830, a decree was passed in the cause appointing *Edward M. Dorsey,* since deceased, a trustee, with

authority to sell certain mortgaged premises for the purposes
mentioned in said cause, and by said decree, said *E. M. D.*
was required, before he proceeded to execute the trusts thereby
reposed in him, to file with the clerk of said court a bond with
security, &c. as trustee, &c. ; that the said *E. M. D.* accepted
the said trust, and on or about the month of August, 1830,
filed in said court a bond to the *State of Maryland*, executed
by himself with the said *A. H. B.* and *E. W. B.* as his sure-
ties, in the penalty of $5,000, with the condition, as required
by said decree; that afterwards, the mortgaged premises were
sold to *Richard H. Brookes* for the sum of $11,500; said
sale duly reported and confirmed, and the greater part of the
purchase money paid to the trustee, *E. M. D.;* that the mort-
gaged premises were sold clear of all incumbrances, and that
the proceeds of sale greatly exceeded the claim of the com-
plainant ; it was by the said court, on or about the 26th Oc-
tober, 1830, ordered and decreed, that the trustee apply the
necessary amount of the purchase money, when received, to
the payment of incumbrances existing prior to the complain-
ants mortgage, and that the residue of the purchase money be
brought into court to be subject to further order ; that in obe-
dience to said order, the auditor of the said court, on or about
the 11th January, 1831, made a partial report, and thereby
applied parcel of the proceeds of the aforesaid sales to the
payment of several claims against said estate ; that on the 14th
January, 1831, a certain *Philemon Chew*, on behalf of the
creditors of himself, and a certain *Henry M. Chew*, theretofore
trading under the style of *Henry M. Chew and Company*, filed
his petition in said cause, and therein alleged, that he had
theretofore, for the use of the creditors of *H. M. C. & Co.*,
recovered a judgment against the aforesaid *W. B. B.* for a
large sum of money, upon which a writ of *fieri facias* was
issued, and levied on the defendant's equity of redemption in
the aforesaid property, and the petitioner therefore insisted,
that the said judgment and execution bound the aforesaid
property, and prayed, that the same might be paid and dis-
charged out of the surplus proceeds of sales as aforesaid, and

that upon said petition the said *P. G.* county court passed an order, and thereby, amongst other things, directed the auditor of said court to state an account between the mortgaged estate in the proceedings mentioned, and the late and present trustees applying the balance that will remain of the proceeds of the said estate, after paying off the incumbrances directed to be discharged by the order of said court in the following order, that is to say : *first,* to the extinguishment of the debt due the complainants with interest and costs of suit, and secondly, to the extinguishment of the judgment mentioned in the aforesaid petition, and other debts, if any, of a similar grade ; that the auditor afterwards reported sundry accounts, and thereby, amongst other things, applied the sum of $932.54, parcel of the proceeds of sale actually received and remaining in the hands of the said *E. M. D.*, as trustee as aforesaid, to the payment of the aforesaid judgment claim, mentioned in said petition of *P. C.*, and the said auditor having made said sum payable to the creditors of *H. M. C. & Co.*, the said *P. G.* county court, afterwards, to wit, &c., ratified the said report, and ordered that the said trustee pay over to the creditors of *H. M. C. & Co.*, the aforesaid sum of money; that after notice to, demand of, and refusal to pay by the said trustee of the said order, an action at law was brought upon the bond of the said trustee to enforce payment of said sum.

The bill further alleged, that execution on the aforesaid judgment had been, some time before the passage of the last order, superseded by the said *W. B. Brooke*, and the complainant and some other person as his sureties ; and that, upon the expiration of the stay thereby obtained, such proceedings were had that your orator was compelled to pay the sum due on the aforesaid judgment; that this payment was made sometime after the commencement of the aforesaid action at law against said trustee and his sureties, and your orator having thereby become entitled to all the rights of the original judgment creditor, and to the benefit of all remedies which the said creditor might have used for recovery of his demand, procured the aforesaid action at law, to be entered for his use,

and the same was continued in prosecution by him until its conclusion, as hereinafter mentioned.

The bill then further alleged, that the said equity cause was removed from *P. G.* county court into this court, and being depending herein, the complainant filed his petition, therein suggesting his rights in the premises, and that the said *E. M. D.*, the trustee, had departed this life, and praying, that the said *A. H. B.* and *E. W. B.*, as his sureties, might be compelled to pay him, the aforesaid sum of money, upon which said petition such proceedings were had, that the Chancellor passed an order directing the said sureties to pay the aforesaid sum of money to this complainant, but from the said order the said sureties appealed to the Court of Appeals, by which court the said order was reversed, upon the ground, that this complainant was not entitled to the benefit of a summary remedy by petition and attachment.

The bill further alleged, that the aforesaid action at law was afterwards tried in *P. G.* county court, and a verdict was rendered therein for the plaintiff for the whole amount of the demand against the said *A. H. B.* and *E. W. B.*, (the said *Dorsey*, the trustee, having departed this life pending said suit,) and judgment was rendered in conformity thereto, but upon an appeal taken, this was also reversed, upon the ground of uncertainty in the description of the persons to whom the aforesaid sum of money was directed to be paid by *P. G.* county court as a court of equity, so that, although your orator is indubitably entitled to the benefit of the original judgment, recovered by the said *Philemon Chew* against *Walter B. Brooke*, and the amount of said judgment is rightly payable out of the proceeds of said sale, yet he is in danger of losing his demand by some oversight or omission of the said court of equity.   But he is advised, that the aforesaid order, directing payment of the aforesaid sum of money unto the creditors of *H. M. C. & Co.*, being, by reason of its generality and uncertainty, adjudged to be inoperative, will be treated by this honorable court as a nullity, so far as to entitle him to another order on the report of the auditor aforesaid, directing payment

of the aforesaid sum of money, unto your orator as the equita-
ble assignee and holder of said judgment, or that such order,
at his instance, will be reviewed and reversed or modified, so
as to assure to your orator, as assignee, the benefit thereof,
and that inasmuch as the said *E. M. D.*, the trustee, has long
since departed this life intestate, without having any personal
representative, and without having any personal estate upon
which an administration might be taken out, and without
having any other estate whatever, your Honor will proceed at
once to give unto your orator an adequate relief, by an imme-
diate decree against the said *A. H. B.* and *E. W. B.*, as sure-
ties of the said *E. M. D.*   Prayer for general relief.

The answer of *A. H. B.*, admitted the decree upon the bill
of *L. S. B.*   The appointment of *E. M. D.* as trustee, but
whether surety of *E. M. D.* in that case, neither admits or
denies, though he was surety for him with *E. W. B.* in some
bond ; that he has no knowledge of the sales made by *E. M.
D.*, nor the payments made to him as trustee ; that large sums
of money were paid by the purchaser of the land to *E. M. D.*,
as attorney for judgment creditors, and not as trustee.   The
answer admitted the proceedings in court, as alleged in the
bill, and insisted, that the order ratified in favor of the credi-
tors of *H. M. C. & Co.*, was in full force, having been neither
reversed nor appealed from, and that it was not now compe-
tent for this court, in this way, to set aside or modify the
same in any manner, and he relies on said order as a bar to
the relief now sought, and prays to be allowed every benefit of
the same at the final hearing.   The answer also admitted, that
the judgment against *Walter B. Brooke* was superseded by
the complainant and others ; the removal of the equity cause
from *P. G.* county court to Chancery, and the subsequent pro-
ceedings thereon, as also the final judgment upon the case at
law, appealed from, as a further bar to the claim.   The death
of *E. M. D.*, the trustee, was also admitted, but whether in-
testate or insolvent, this respondent has no knowledge, and
that now since his death, it is not in the power of this court to
reverse or modify the order in favor of the creditors of *H. M.*

*C. & Co.*, or to adopt any proceedings, or pass any order to affect the rights of this defendant.  The answer then denied, that *E. M. D.* did, as trustee, receive any money applicable to the payment of the claim now attempted to be charged upon the defendant by this complainant, or to which the creditors of *H. M. C. & Co.* were ever in any manner entitled ; and also the jurisdiction of the court, and *if liable at all, it was at law.*

The answer of *W. B. B.*, stated, that he had no knowledge of the matters of the bill except as disclosed by the proceedings at law and equity, which he admitted.  After the death of *E. W. B.*, his administrator, *James B. Belt*, answered the bill, and relied substantially on the same defences set up in the answer of *A. H. B.*

The general replication being filed, the defendants admitted—

1. The recovery of the judgment at law by *Philemon Chew*, for the use of the creditors of *H. M. Chew & Co.*, against *Walter B. Brooke.*

2. The supersedeas of that judgment by the complainant and others.

3. The levy of a *fi. fa.*, issued on the supersedeas judgment, on the property of the complainant, and that, in consequence of such levy, he paid the amount due on the judgment to the attorney of the plaintiff, and the judgment was duly assigned to and entered for the use of the complainant.

The other facts established in the cause, appear sufficiently in the opinion of this court.

When the cause was submitted for final hearing, all objections to the sufficiency of the allegations of the bill and answer were waived, so as to entitle the parties to such decree as they may be entitled to on the proofs, and that a decree may be passed in the court *pro forma* dismissing the bill, from which the complainant will appeal; and if such decree be reversed, the cause is to be remanded to the Court of Chancery for an account of assets of the original defendants, *Boteler* and *Belt*, in the hands of their administrators, with such other directions touching the amount of the plaintiffs' claim or the liability of the defendants therefor, as the Court of Appeals may think right.

Under this agreement, the Chancellor (BLAND) dismissed the bill, *pro forma*, and the complainant appealed to this court.

This cause was argued before BUCHANAN, C. J., STEPHEN, DORSEY and CHAMBERS, J.

By T. G. PRATT and ALEXANDER for the appellant, who contended—

1st. That it clearly appears, that *A. H. Boteler* and *E. W. Belt* were the sureties on the bond executed by *E. M. Dorsey*, as trustee, for the sale of the real estate of *Walter B. Brooke.*

2nd. That it is clearly established, that the judgment of *Philemon Chew* against *Walter B. Brooke*, which was entered for the use of the creditors, *Henry M. Chew & Co.*, was paid by the appellant as surety for said *Brooke*, and that the appellant is now entitled to all the rights under said judgment which at any time belonged to the original plaintiff.

3rd. That the fact is clearly established, that *E. M. Dorsey*, as trustee, did receive a sum of money applicable to the payment of said judgment, and equal to its full payment.

4th. That the order of the 17th April, 1832, directing the payment of the money applied by the auditor to the said judgment, is not sufficient to authorize a recovery at law upon the trustees' bond of *Dorsey.*

5th. That said *E. M. Dorsey* being now dead, insolvent and without administration on his estate, no order could be obtained which would authorise a suit at law upon his said bond, and that the only remedy of the appellant is in a court of equity.

6th. That independent of the last objection, the appellant was entitled to relief in equity on the ground, that the original bond is lost.

By T. F. BOWIE and J. JOHNSON for the appellees.

The *Prince George's* county court in equity, passed a decree on the 27th July, 1830, upon a bill filed by the mortgagee, for the sale of certain property which had been mortgaged by *Walter B. Brooke* to *Lucy S. Brooke.*

*E. M. Dorsey* was appointed trustee to sell, and it is alleged, that the intestates of the appellees became sureties in his bond as trustee. He made the sale on the 9th of September, 1830, to *R. H. Brookes,* who afterwards assigned the purchase to *Otho B. Beall,* by whom certain sums were paid to *Dorsey,* the exact amount of which does not appear.

*Dorsey's* appointment was revoked on the 17th of December, 1830, and another trustee appointed in his place.

Prior to the revocation, his sale had been reported to, and ratified by the court; and the auditor on the 9th of January, 1832, reported three accounts, numbered 1, 2 and 3.

In number 2, the sum of $932.54 was stated to be due, and payable to "the creditors of *Henry M. Chew and Company.*"

Upon this account, the court, on the 17th of April, 1832, passed the following order: "Ordered by the court, sitting as a court of equity, that the within report of the auditor be, and the same is hereby ratified and confirmed, and that *Edwin M. Dorsey,* the trustee, is hereby directed and required to pay over to the creditors of *Henry M. Chew and Company,* the amount appearing to be due to them, by the within report of the auditor."

The claim thus stated to be due to the creditors of *Henry M. Chew and Company,* was founded upon a judgment against *Walter B. Brooke* the mortgagor, rendered at April term, 1829, for the use of the creditors of *Henry M. Chew and Company,* which judgment was superseded by the complainant and another, and the money being paid by the complainant, it was endorsed for his use by an order filed on the 15th January, 1833.

Before this, to wit, on the 19th of April, 1832, a suit had been commenced on the bond of the trustee against him, and his alleged sureties, which was afterwards prosecuted for the use of the complainant, and which resulted in a verdict and judgment against the sureties, (*Boteler and Belt,*) *Dorsey* the principal being dead, for the amount of the claim.

Upon appeal, this judgment was reversed at December term, 1836. *See* 8 *Gill and Johns.* 359.

The complainant then, on the 25th of August, 1837, filed the present bill, in which, after setting forth the various proceedings in the case of *Lucy S. Brooke vs. Walter B. Brooke,* and other matters not therein contained, prayed the Chancellor, either to regard the order of the 17th of April, 1832, as a nullity, and to pass another order on the report of the auditor, directing the payment of the money by the defendants to him, or that the order might be reviewed and reversed or modified, so as to give the complainant the benefit of the said judgment as against these defendants, the alleged sureties of *Dorsey.*

The defendants in their answer, do not admit, that they signed the bond in question, though they do admit, that about its date, they did sign a bond as *Dorsey's* sureties; but not having themselves read, or heard the condition thereof read, they are unable to say, whether they did sign this particular bond or not.

They do not admit, that *Dorsey,* as trustee, received any money applicable to the payment of the claim of the complainant, nor that *Dorsey* in his life time, was ever served with an order to pay, or that any demand was ever made on him for the payment of the money. They admit the action at law on the bond against them and *Dorsey,* as alleged in the bill. That there was a judgment against them in the county court, and that upon appeal, said judgment was reversed, and final judgment rendered in their favor, which they rely upon as a bar to the present proceeding. The defendants allege, that the order of the 17th of April, 1832, is in force, and deny the power of the chancery to review, or set it aside; and they also insist, that their contract, if they did sign the bond, is a *merely legal contract,* and cannot be the foundation of a bill in equity.

Proof was taken tending to establish the execution of the bond, and that the original was lost or mislaid.

Evidence, however, was offered on the part of the defendants, that many official copies of the bond are in existence, and on file in the clerk's office, and were so before and at the time this bill was filed, one such attested copy being filed under the commission in this case.

It was agreed, that the papers in the case of *Lucy S. Brooke vs. Walter B. Brooke*, might be read at the hearing; that the opinion of the Court of Appeals in the case before referred to, in 8 *Gill and Johns.* 359, might be read; that *Dorsey* died intestate without property, and that there had been no administration upon his estate; that objections to the averments of the bill and answer be waived; that a decree *pro forma* be signed dismissing the bill; and that should the Court of Appeals reverse the decree, the case should be remanded to Chancery for an account of assets, and such further directions as the court might think proper to give.

Upon this agreement, the Chancellor, upon the 2nd of June, 1841, dismissed the bill *pro forma* with costs, and the complainant appealed.

In support of the decree, it will be contended—

1. That it is not competent for the Court of Chancery, either by original or supplemental bill, or by petition, to reverse, alter or review, the decrees or orders of the county courts as courts of equity.

2. That if such power can be exercised by the Chancellor in any case, the time which intervened between the order sought to be reversed or altered, and the time of filing the present bill, is an insuperable objection to the exercise of the power in this case.

3. That in no event could the intestates of the appellees be charged by a bill in Chancery, their contract, if they signed the bond, being a strictly legal contract, for which they are liable only in a court of law.

4. That the evidence shews, that *Dorsey*, the original trustee, never *did receive* any money applicable to the payment of the complainant's claim, or at least it does not appear, that he did receive any money applicable to the payment of said claim.

DORSEY, J., delivered the opinion of this court.

Much time has been spent in discussing the question, whether this be a supplemental bill or a bill in the nature of a bill of review, seeking to alter or amend some decree or order,

passed in a cause heretofore depending in court. In neither of these aspects can it be sustained; nor is it so regarded by us. We deem it an original bill, stating the previous proceedings of the court, not with a view to their alteration or amendment, but as a portion of the facts out of which the complainant's equity arises. The case of *Boteler and Belt*, 7 *Gill and John.* 143, has been relied upon as a clear adjudication against the rights now asserted by the appellant, and as settling the doctrine, that a Court of Chancery has no power over the securities of a trustee, their responsibility existing only at law. As a general rule, this doctrine is undeniably true; but like other general rules, it is obnoxious to some exceptions, of which we think the case before us is one. The case referred to, in our view of it, contains nothing adverse to the appellant's right to recover in the present form of proceeding; on the contrary, the court explicitly declares, that it means to express no opinion upon that subject.

Where property is sold under a decree of a court of equity, the proceeds of sale are considered in the custody of the court; and no person, whether a party to the suit or otherwise, can maintain a suit at law for the recovery of any portion thereof, until payment of the claim thus prosecuted shall have been awarded by the court, and (according to the case of *Oyster and Annan*, 1 *Gill and John.* 450,) notice of such award, and a demand of payment, shall have been made of the trustee, or other officer in whose hands the fund may have remained, as the fiduciary agent of the court. This court, in the case of *Boteler and Belt vs. State*, use of *Chew & Co.*, 8 *Gill and Johnson*, 360, having, in effect, declared the order in favor of the creditors of *Henry M. Chew & Co.* a nullity, no order of court has been passed for the payment of the judgment owned by the appellant, in virtue of his having paid it as one of its superseders. Nor can such an order now be passed—the delinquent trustee, after wasting the fund, having died intestate, without any administration or estate on which an administration could be had. To place himself in a condition to prosecute at law, his claim against the sureties, on the trustees

bond, is, to the appellant, wholly impracticable; and if relief be denied him, in the mode in which he now seeks it, he is remediless, indeed, both at law and in equity.

The search, proved to have been made for the original bond, is, we think, sufficient evidence of its loss to warrant the interposition of a court of equity, as far as that fact would give it jurisdiction. But, in our opinion, the question of jurisdiction does not depend upon the loss of the bond. If the bond were in existence, the jurisdiction is sustained, if sustainable at all, by the other facts in the cause.

It has been insisted, that *E. M. Dorsey*, the trustee, having been ordered to pay off the prior incumbrancers, such incumbrancers thereby became creditors of the fund in *Dorsey's* hands, and were bound to abide its loss by *Dorsey's* insolvency, so far as the residue of the proceeds of sale and the other claimants thereof, were concerned. And consequently, that the order on *Mundel* to pay off the prior incumbrancers with the fund to which the appellant and other subsequent incumbrancers were entitled, is erroneous. Without stopping to inquire what benefits would ultimately result to the appellees if the positions thus urged in their behalf were established; and whether, under the well settled principles of substitution, a Court of Chancery would not subrogate the appellant to all the rights of the prior incumbrancers, whose claims being ordered by the court to be paid by the trustee, for whom the appellees were securities, stand exempt from one of the strongest grounds of defence, which has been relied on in bar of the relief sought by the appellant; let us examine whether the incumbrancers were in the predicament which has been ascribed to them. Had they been parties to the proceedings before the court, the consequences asserted by the appellees might have been urged with much plausibility. But these incumbrancers were never before the court, nor made parties to its proceedings, and were in no wise bound to seek payment of their claims out of the proceeds of sale in the hands of the trustees, and if not paid off, might have prosecuted their liens upon the lands sold after their conveyance to the purchaser,

notwithstanding he had paid the whole purchase money, and the land had been sold to him by the trustee free from all incumbrances. To rescue the purchaser from such glaring injustice and oppression, the court very properly, on the failure and inability of *Dorsey* to pay them out of the funds in his hands, ordered their payments by *Mundel,* the second trustee.

It has been stated by the appellees solicitor, that there was no breach of the bond in the lifetime of the trustee, he having complied with every order of the court obligatory upon him. This statement, we conceive, is not warranted by the proofs and proceedings before us. By the original decree, under which the sale was made, the trustee was ordered to report the sale and to bring the proceeds of sale into court; the latter branch of which order he has wholly disobeyed, and thus broken the condition of his bond. For the consequences of which breach, both he and his securities are liable to be sued at law by any person who can shew himself damnified thereby, and clothed with the requisite authority to sue. A forfeiture of the bond, attended with similar consequences, occurred when the trustee failed to comply with the order of the court of the 26th of October, 1830, commanding him to pay off the prior incumbrances, and to bring into court the residue of the purchase money in his hands. At law, then, the securities were not only not absolved from their contract, but were liable to be sued thereon, the moment the requisite sanction to the claims should be given by the court in which the proceedings were pending. Is it then consistent with reason or equity, that a violated contract, in full force and operation at law, should be discharged by the mere accidental circumstance of the trustee's death, before the final adjudication of the court, upon the claims before it? But it is said, that the order of the 26th of October, 1830, to pay off prior incumbrances, is a rescission of that part of the original decree, requiring the proceeds of sale to be brought into court. This is not the fact. The funds being retained by the trustee, instead of being brought into court, no other order could well be passed, consistently with the existing condition of things. The order

too of the 26th of October, was not confined to the payment of
prior incumbrances, but enjoined the trustee to bring into court
the residue of the proceeds of sale remaining in his hands,
after the making of such payment.    Thus, in respect to such
residue, reiterating the order in the original decree, as to the
bringing into court of the proceeds of sale.    Upon both branch-
es of this latter order, was the bond of the trustee forfeited in
his lifetime: and the liability of him and his sureties, to be sued
at law for such forfeiture, fixed and undeniable ; the com-
mencement of suit being delayed only until the damnified party
should have been recognized as such by the court; and he
should have gone through the form of notice to the trustee
and demand of payment.    If relief in the mode in which he
has now sought it, be denied to the appellant, he is wholly
without remedy.    And what is it that has placed him in this
lamentable condition ?    The simple accident, that before pay-
ment of his claim has been ordered, and notice given and
demand made, the trustee has departed this life.    To place
himself in a condition to assert his rights in a legal forum,
has, by this accident, become impracticable.    Can a stronger
case than that now before us, for the interposition of a court
of equity upon one of its well established heads of equitable
jurisprudence, be well imagined, unless indeed the objection
to relief set up by the appellees, on the ground of their surety-
ship, can be sustained.    The appalling consequences resulting
from such a defence, are such, that before it would be sanc-
tioned by any court, much less a court of equity, the most im-
perative and unanswerable authorities must be adduced to
support it.    To none that we regard as such, have we been
referred.    It, in fact, establishes the principle, that whenever
a trustee, having funds in his hands arising from property
sold under a decree, dies before the appropriation of the fund
amongst the claimants has been ordered by the court, and a
demand of payment, accordingly made of the trustee, his se-
curities in his bond are absolved from all liability thereon.    In
support of this startling proposition, the solicitor of the appel-
lee asks, " Will you do any thing to enlarge the liabilities of

securities?" A court of equity will do nothing to extend the liability of securities beyond the clear intent and import of their contract. But if to such an extent they cannot at law be held liable, by reason of fraud, accident or mistake, a court of equity, to prevent a failure of justice, will interfere, and enforce the execution of their contract according to its obvious meaning and design. As authorities for this, see the cases of *Crosby vs. Jonathan Middleton Colleson, and al, Pre. Ch.* 309 ; *Skip vs. Husy and al.* 3 *Atk.* 93, *and Berg vs. Radcliffe,* 6 *John. C. R.* 302. The death of *E. M. Dorsey,* under the circumstances in which it took place, is such an accident as would entitle the appellant to relief in a court of equity in the manner in which he seeks it.

But suppose, that we are wrong in sustaining, under the circumstances of this case, the jurisdiction of the Chancery Court on the ground of accident, it ought to be sustained upon that great principle in which chancery jurisdiction was originally assumed—that without it, there would be a total failure of justice, a court of law being incompetent to grant any adequate relief. This doctrine is fully supported by the Supreme Court of Appeals of *Virginia,* in the case of *Spotswood vs. Dandridge and others,* 4 *Munford's Rep.* 289. A case in principle not distinguishable from that before us. In *Virginia,* if an executor commits a devastavit, suit upon his bond, against his securities, cannot be maintained, until the devastavit against the executor be established in a suit at law. In the case cited, the executor died without any personal representation after a devastavit, but before its establishment by suit. Relief was granted against the sureties on their bond by a bill in Chancery. Speaking in reference to proving the devastavit otherwise than by a suit at law, the court say, "if this cannot be done in one tribunal, owing to its particular forms of proceeding, it may be done in another, for it is a fundamental principle, that there is no right without a remedy." This case is cited with approbation in the case of *Carow, Ex'r. of Mowatt, vs. Mowatt's Adm'r,* 2 *Edwards' Ch'y. Rep.* 57, where it was decided, that an administrator committing a devastavit,

being dead, before action establishing it at law, a court of equity will take cognizance of a suit against his sureties or their representatives, and the persons interested in any estate he may have left, and make them liable for waste or misapplication of assets. But this would not be done in an ordinary case, where the administrator is in full life and within the reach of a court of law. The same principle is settled in *Moore and al vs. Armstrong and al*, 9 *Porter's Reports*, 697, where the administrator being dead and insolvent, a bill in Chancery was filed against his surviving surety and the executors of his deceased surety. The right thus to proceed in Chancery was fully recognized, although no previous judgment was obtained at law against the administrator; the court, at the same time, declaring, "that no one can proceed against the sureties in the administration bond, at law, who has not first recovered a judgment against the administrator." That "there is nothing in the constitution of a court of equity which should induce it, in an ordinary case, to depart from the rules of laws in the administration of justice, yet, as its mode of procedure is materially different, more enlarged and liberal, it must of necessity take jurisdiction of cases which the ordinary forums cannot reach." And the court further add, that if it were not allowable to proceed against the sureties alone, "the plaintiffs, though they had just ground of complaint, would be remediless. This cannot be, for it is the just boast of the common law, that every right has its appropriate remedy, if not in the ordinary forum, at least in Chancery, which exercises an extraordinary jurisdiction."

This court will sign a decree reversing, with costs, the *pro forma* decree of the Chancellor, and making such provision for the final adjudication of the rights of the parties in this cause as is in accordance with their agreement in the record.

DECREE REVERSED WITH COSTS AND CAUSE REMANDED.