# BOND

*v.*

## THE CARTER HARDWARE COMPANY.

CERTIORARI; SECURITY FOR COSTS BY NON-RESIDENTS; JUSTICES
OF THE PEACE; TRIAL OF RIGHT OF PROPERTY TAKEN ON
EXECUTION.

1. The office and application of the writ of *certiorari* considered and
discussed, and a motion to dismiss an appeal from an order of
the lower court quashing a writ of *certiorari* issued to a justice
of the peace upon the allegation that he was without jurisdic-
tion to entertain the proceedings, *held* not to be entitled to
prevail.

2. Whether the provision of R. S. D. C., Sec. 1002, providing that
non-residents of this District shall not commence suit before
any justice of the peace without first giving sufficient security
for costs, is valid, *quære.*

3. A trial of the right of property, under the provisions of Secs. 22–
26 of the Act of Congress of February 19, 1895, Ch. 100, in per-
sonal property seized on execution issued by a justice of the
peace and claim to which has been made by notice in writing
to the constable making the seizure, by a party other than the
defendant in the execution, is not a suit within the meaning
of Sec. 1002, R. S. D. C., providing that non-residents shall not
commence suit before a justice of the peace without first giving
sufficient security for costs.

No. 891. Submitted May 2, 1899. Decided June 6, 1899.

HEARING on an appeal from an order of the Supreme
Court of the District of Columbia quashing a writ of *certiorari*
issued to a justice of the peace. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. M. J. Colbert* and *Mr. George C. Aukam* for the ap-
pellants:

Prior to the passage of the act of February 19, 1895,

entitled " An Act to increase the jurisdiction of justices of the peace in the District of Columbia," the only mode of recovering property unlawfully taken on execution or attachment was by the action of replevin. The effect of section 23 of said act was merely to substitute the remedy therein provided for the action of replevin in such cases. " Any proceeding in a court of justice by which an individual pursues the remedy which the law allows him, whatever the mode, if a right is litigated, the proceeding by which the decision of the court is sought is a suit." Anderson's Dict. of Law, 990; *Weston* v. *Charleston,* 2 Pet. 464; *Holmes* v. *Jennison,* 14 Pet. 566; *Kohl* v. *United States,* 91 U. S. 375.

" To commence a suit is to demand something by the institution of process in a court of justice." *Cohens* v. *Virginia,* 6 Wheat. 408. Before an action can be commenced, the cause of action must be complete. Anderson's Dict. of Law, 197; 21 Cent. Law J. 401, 412 (1885), (cases). When, during the progress of a trial, want of jurisdiction clearly appears, it is the duty of the court to dismiss the cause. *Way* v. *Way,* 64 Ill. 406.

There can be no doubt that the proceeding before the justice of the peace is a suit within the meaning of section 1002 of the Revised Statutes of the United States relating to the District of Columbia, providing that "non-residents of the District shall not commence suit before any justice of the peace without first giving sufficient security for costs."

*Mr. E. S. Duvall* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the court:

The motion to dismiss the appeal in this case can not prevail. The appeal is taken from an order of the court below quashing a writ of *certiorari,* and remanding the proceedings to the justice of the peace, before whom proceedings, under the Act of Congress of February 19, 1895, Ch.

100, Secs. 23, 24 and 25, were pending. The writ of *certiorari* had issued to the justice requiring him to certify the proceedings to the Supreme Court of the District; upon the allegation that the proceeding had been taken without jurisdiction in the justice to entertain it. The writ of *certiorari* is a common law writ that issues from a court of record of general common law jurisdiction to a court or justice of inferior and subordinate jurisdiction; and, in a case like the present, the writ issues not by way of an appeal, or in lieu of an appeal, but for the purpose of enabling the court of superior general jurisdiction to inspect the proceedings of the inferior jurisdiction, and to determine whether that court or justice is proceeding within the limits of its jurisdiction and according to the law; and it lies either before or after judgment of the inferior tribunal. If the proceedings of the inferior tribunal be found not to be within its jurisdiction, the proceedings are quashed; but if found to be within the jurisdiction and according to law, the writ of *certiorari* is quashed, and the proceedings remanded to the justice or jurisdiction from which they were certified for further and completed proceedings. The writ of *certiorari* at the common law, and in cases like the present, is therefore not in the nature of a writ of error or of an appeal, but is issued in the exercise of a supervisory jurisdiction, and is a writ that enables a court of superior common law jurisdiction to inspect and revise the proceedings of an inferior tribunal as to the limits and exercise of its special jurisdiction. *Hall* v. *The State*, 12 G. & J. 320. As showing the office and application of the writ of *certiorari* in the case of a special limited jurisdiction, we may refer to the leading and celebrated case of *Groenvelt* v. *Burwell*, 1 Salk. 144, and 1 Lord Raym. 213, 454. In that case the facts were peculiar, but strongly illustrate the application of the general principle. The censors of the college of physicians had power by their charter, confirmed by act of parliament, to fine and imprison for malpractice in physic; and accord-

ingly they condemned Dr. Groenvelt for administering *insalubres pillulas et noxia medicamenta,* and fined and imprisoned him; and the question was whether error or *certiorari* lay. But Lord Holt held that it was not a question of appellate jurisdiction in the King's Bench, and therefore a writ of error would not lie, but that a writ of *certiorari* would lie, for the reason, as he stated, "that no court can be intended to be exempt from the superintendency of the King's Bench. It is a consequence of every inferior jurisdiction of record, that their proceedings be removable into this court, that it may inspect the record, and see whether they keep themselves within the limits of their jurisdiction. See 3 Cro. 469, *Long's Case.* By 23 Hen. 8, Ch. 5, the commissioners of sewers were to certify their proceedings into chancery; and the 13th Eliz.,Ch. 9, says the commissioners shall not be compelled to make any certificate; upon this, by mistake, they thought themselves not accountable on *certiorari* and refused to obey a *certiorari* issued out of the King's Bench; and for this the whole body of the commissioners were laid by the heels."

That case was taken up on writ of error and the judgment of the King's Bench was affirmed. 1 Salk. 264, and 2 Lord Raym. 213; and S. C. Comyns, 76. In that case, on error, it was said that at common law, a writ of error lies only on the judgments of courts of record at common law; but where they act in a summary method, or in a new course different from the common law, "there a writ of error lies not, but a *certiorari.*"

In that case it was held that *certiorari* was not only proper to be issued to the censors of the college of physicians, but that the judgment of the court of King's Bench was reviewable on error to the court of errors. *Hall* v. *State, supra; Harris* v. *Barber,* 129 U. S. 366.

In the present case the proceeding was under a special statutory provision for the protection of the officer holding the execution, the plaintiff in the execution, and the

jurisdiction of the court under whose authority property of a third person had been seized, in order to avoid unnecessary litigation.

But the appellants in this case contend that the proceeding taken under the statute is an independent proceeding, and is an independent suit or action taken by the appellee, and therefore is such a suit as could not be instituted by the appellee, a corporation of the State of Virginia, without first giving sufficient security for costs. The provision of the statute upon which this contention is based, is found in Sec. 1002 of the Revised Statutes relating to the District of Columbia, which declares, that—

"Non-residents of the District shall not commence suit before any justice of the peace without first giving sufficient security for costs."

This provision is found in the Act of Congress of February 22, 1867, Ch. 63, Sec. 7. Whether this condition to the right of the citizens of the United States to obtain the equal benefit of judicial remedies in this District be valid or not,—this District being the common territory of all the States and of the people of the Union, and at whose expense the District government is, to a large extent, sustained,—is a question not necessarily involved, and which we need not decide.

In this case, suit had been commenced and prosecuted to judgment and execution, by Bond and Wiley, the appellants, against W. S. Duvall; and the constable to whom the execution was directed, levied, the execution upon a particular article of personal property, found in the possession of the defendant in the execution, Duvall. This article of personal property was claimed by the appellee, The Carter Hardware Company, a corporation of the State of Virginia, having a place of business in this District, by written notice to the constable of its right to the property; and upon that notice this proceeding was founded. The statute which authorized the proceeding is the Act of Congress already referred to, of

February 19, 1895, Ch. 100, entitled "An act to extend the jurisdiction of the justices of the peace in the District of Columbia, and to regulate the proceedings before them."

By section 23 of that act, it is provided: " That when personal property is taken on execution or attachment issued by a justice of the peace, and such property is claimed by a person other than a defendant therein, or is claimed by the defendant to be property exempt from execution, and such claimant shall give notice in writing to the constable of his claim to such property, or that it is exempt as aforesaid, the constable shall notify the plaintiff in such writ, or his agent or attorney, of such claim, and shall also notify such plaintiff and the claimant before what justice, and at what time and place, a trial of the right of property shall be had." And by section 24 it is enacted, " That the trial of the right of property in such case shall be before the justice of the peace who issued such writ, unless removed by change of venue, as now provided by law; or, if he should be unable to attend such trial, before some other justice of the peace in said District."

The act then provides, by sections 25 and 26, that the justice shall enter such cases on his docket, and the trial shall be had therein in the same manner as in other trials before justices of the peace; and a change of venue may be taken as in other cases; and that in case the property shall appear to belong to the claimant, or to be exempt from execution, judgment shall be entered against the plaintiff in the execution or attachment for costs, and the property levied upon shall be released; but if it shall appear that the property does not belong to the claimant, or is not exempt, judgment shall be entered against the claimant for costs, including such additional costs as shall have been made by the delay in the execution of the writ. It is further provided, by section 28, that the judgment in such cases shall be a complete indemnity to the constable in proceeding to sell or return any such property, etc.

The appellants contend that the claimant, by making claim to the property levied on, and giving notice of such claim to the constable, thereby commenced a suit before the justice of the peace within the meaning of section 1002 of the Revised Statutes, and that the same can not be prosecuted without first giving security for costs; while, on the other hand, the appellee contends that the statutory proceeding by claim and notice is not contemplated nor embraced either by the terms or the reason of the section of the statute requiring the giving of security for costs by a plaintiff before commencing a suit before a justice of the peace. And the appellee further contends that even if such construction as that contended for by the appellants could be placed upon the statute, the right to insist upon the security for costs was waived by the appellant's appearance to the proceeding before the justice, and there attempting to support the validity of the levy made by the constable. But the learned justice below, in quashing the *certiorari*, and remanding the proceeding to the justice of the peace, held that the claim proceeding was not contemplated or embraced by section 1002 of the Revised Statutes; and in that opinion we entirely concur.

The notice of claim of property given to the constable, as required, may in a certain sense, and for certain purposes, after the justice is notified by the constable and the former has entered the claim upon his docket, to be tried, be regarded as a suit or action. But it clearly can not be regarded as a suit that *shall not be commenced before a justice of the peace without first giving security for costs*. After the claimant has given the notice of claim to the constable the latter, being the party that can only proceed at his peril, then becomes the active party in bringing the plaintiff and claimant before the justice for the trial of the right of property; and until this is done and the right of property determined, the hands of the constable are stayed and the levy made by him is suspended. Hence the statute has provided that the con_

stable shall notify the plaintiff of the claim, and also notify both plaintiff and the claimant before what justice, and at what time and place a trial of the right of property shall be had. The statute is mainly intended, by summary means, to indemnify and save harmless the officer charged with the execution of the writ or process, and to protect the plaintiff who may direct the levy upon or seizure of the property, and also to uphold and maintain the power and jurisdiction of the justice, in making his process effective, but at the same time to avoid doing injury to third persons.

In proceeding on a *fieri facias* or attachment, the constable, or other officer executing the process, is bound at his peril to take only the goods and chattels of the defendant; and therefore if he take the goods of a third person, though the plaintiff may assure him they are the goods of the defendant, he becomes a trespasser; for he is obliged at his peril to take notice to whom the goods belong; and if the plaintiff in the execution or attachment direct the levy upon the particular goods seized, he is equally liable as the officer seizing the goods. 2 Tidd's Prac. (9th Ed.) 1008; *Conner* v. *Mackintosh,* 48 Md. 374.

In nearly all the States of the Union there are to be found statutes of the character of the Act of Congress of February 19, 1895, Ch. 100, and they have been, to a large extent, modeled on the statute of 1 and 2 Wm. 4, Ch. 58. By some courts these statutes have been denominated "Interpleader Acts," or "Intervener Acts," or "Claimant Acts;" the English statute being denominated an "Interpleader Act." By the sixth section of this English statute, it is recited, that whereas difficulties sometimes arise in the execution of process against goods and chattels, issued by the courts, by reason of claims made to such goods and chattels by persons other than the parties against whom such process has issued, whereby sheriffs and other officers are exposed to the hazard and expense of actions, and it is reasonable to afford relief and protection in such cases to

sheriffs and other officers ; therefore it is enacted that "when any such claim shall be made to any goods or chattels taken, or intended to be taken, in execution under any such process, or to the proceeds of value thereof, it shall and may be lawful to and for the court from which such process issued, *upon application of such sheriff or other officer,* made before or after the return of such process, and as well before as after any action brought against such sheriff or other officer, to call before them, by rule of court, as well the party issuing such process, as the party making such claim, and thereupon, to exercise for the adjustment of such claims, and the relief and protection of the sheriff or other officer, all or any of the powers and authorities thereinbefore contained, and to make such rules and decisions as shall appear to be just, according to the circumstances of the case ; and the costs of all such proceedings shall be in the discretion of the court."

Under this statute many decisions have been made, but in none of them do we find it suggested that the proceeding authorized and directed by the statute was to be regarded as an ordinary suit or action instituted by the claimant of the property against either the plaintiff in the execution, or the officer making the levy. The proceeding, upon the application of the officer, is treated as in the nature of an interpleader, as between the parties ; and hence the act is called an *interpleader act.* The proceeding prescribed by the Act of Congress of February 19, 1895, is not an independent suit or action, such as that contemplated by Sec. 1002 of the Revised Statutes, but is an ancillary and dependent proceeding ; and as was declared by the Supreme Court of the United States, in *Krippendorf* v. *Hyde,* 110 U. S. 276, 283, the grounds of the procedure "are the duty of the court to prevent its process from being abused to the injury of third persons, and to protect its officers and its own custody of property in their possession, so as to defend and preserve its jurisdiction ; for no one is allowed to

question or disturb that possession except by leave of the court." See, also, *Gumbel* v. *Pitkin*, 124 U. S. 131, 143.

We perceive no error in the ruling of the court below, and the order appealed from must therefore be affirmed; and it is so ordered.                          *Order affirmed.*